THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellee, *v.* THE EXCHANGE NATIONAL BANK OF CHICAGO *et al.,* Respondents-Appellants.

(No. 73-12;

Second District—October 23, 1974.

*Rehearing denied November 19, 1974.*

Edward T. Graham, of Glen Ellyn, for appellant.

William J. Scott, Attorney General, of Chicago (John S. Teschner and William P. Ryan, Assistant Attorneys General, of counsel), for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is a condemnation case arising under the "quick take" section of the Eminent Domain Act (Ill. Rev. Stat. 1969, ch. 47, pars. 2.1—2.10) and involves a question as to interest on the award of just compensation. The respondents appeal from the decision of the Circuit Court of Du Page County allowing interest from August 1, 1971, and argue that interest should be allowed from the date on which the State made the required deposit under the "quick take" procedure which was January 9, 1970.

The appellee (who was the petitioner in the condemnation case) is the Department of Public Works. The property is located just west and north of the intersection of Route 53 and Route 20 (Lake Street). It comprised about 23,000 square feet including the buildings and was used as a restaurant and dwelling at the time of the filing of the condemnation petition. The petition to condemn under "quick take" procedure was filed on October 10, 1969, but at that time only about 4,000 square feet of vacant land was condemned, being an "L" shaped strip along the southern and western edges of respondents' property. There was only one access to the property from the highway (Route 20), and the southern strip of the "L" shaped piece condemned included this access. There was no other direct access.

On January 9, 1970 the State deposited the required 125% of the preliminary appraisal of the land condemned ($27,500) and thereupon began operations along the southern strip of the "L" (called Parcel 0023). However, the State did not, at that time, cut off the access from appellants' land to Route 20, although it legally could have done so. Instead the State allowed the appellants to have access over this southern strip to Lake Street (Route 20) during its operations until August 1, 1971, on which date the State entered into actual possession of all direct access rights to the remainder of the property and thereafter denied direct access to and from the property.

The trial court found, as a matter of fact, that the appellants occupied and used the remainder of the land until August 1, 1971, and had direct access from and to Route 20 until that date.

The appellants had previously filed a cross petition praying that the State be required to take all the appellants' property and pay the just compensation therefor. After direct access to the remainder of the property was cut off and it became evident that the remainder was land-

locked, the State amended its petition to condemn to include the taking of the entire property of the defendants. After a trial to determine just compensation the jury found the just compensation for the taking of the entire property to be $92,000. In calculating the interest to be paid under the "quick take" procedure the court awarded interest on the amount of the award (less the deposit already withdrawn by the defendants) from August 1, 1971, until September 20, 1972 (the date of approval of the final award by the State).

The respondents in this appeal contend the judge erred in granting interest from August 1, 1971, only, inasmuch as the date of the "quick take" deposit was January 9, 1970. The respondents maintain that as of that date the "quick take" condemnation was affirmed and made certain and the State could have then taken possession of the property condemned, including the access. Since the State could have occupied the strip across the access at any time after January 9, 1970, it is the respondents' contention that under section 2.6 of the Eminent Domain Act interest on the award of just compensation should be paid from January 9, 1970.

Section 2.6 of the Eminent Domain Act (Ill. Rev. Stat. 1969, ch. 47, par. 2.6) reads as follows:

> "The petitioner shall pay, in addition to the just compensation finally adjudged in the proceeding, interest at the rate of six per cent (6%) per annum upon:
> (a) Any excess of the just compensation so finally adjudged, over the amount deposited by the petitioner in accordance with the provisions of Section 2.3(a) of this Act, from the date on which the parties interested in the property surrendered possession of the property in accordance with the order of taking, to the date of payment of such excess by the petitioner."

The State points out that since the date on which the owners of the property surrendered possession in accordance with the order of taking was, according to the court's finding, August 1, 1971, the language of the statute was followed in allowing interest from that date. The appellants however maintain that loss of market value in the remainder occurred on January 9, 1970, making interest payable from that date. The property was damaged, according to the appellants' theory, as soon as its potential market value for sale or lease was diminished or destroyed. They insist interest must be paid from the date that occurred, which in this case was January 9, 1970, the date on which the State confirmed its "quick take" condemnation by depositing the required deposit and thereby became entitled to possession of the property.

The appellants contend that to interpret the Eminent Domain Act as allowing interest only from the actual date of surrender of possession of the property is to place the Act in opposition to the Illinois Constitution. The Constitution, article I, section 15, states, "Private property shall not be taken or damaged for public use without just compensation as provided by law." They maintain that since the property was damaged when its potential value was diminished or destroyed by confirmation of the "quick take" condemnation on January 9, 1970, vesting the right to title and possession to the State, it would contravene the Illinois Constitution if interest was not paid from that date. The respondents cite *People ex rel. First National Bank v. Kingery* (1938), 369 Ill. 289, in support of the proposition that compensation is payable under Illinois law for loss of market value and the date of impairment of market value should therefore be the date on which the interest starts to run. However, we do not perceive any parallel between that case and the case before us. The cited case was concerned with the enforcement of a substantive right for damages under the former state constitution by writ of mandamus and the case merely confirms the substantive right to recover for actual damage sustained. It was not concerned with the date from which interest was payable on an award.

The respondents further contend that in any event the allowance of interest only from August 1, 1971, is error because the words "from the date on which the parties interested in the property surrendered possession of the property in accordance with the order of taking," in paragraph (a) of section 2.6 of the Eminent Domain Act, do not mean surrender of actual possession but surrender of the *right* to possession. Inasmuch as the State acquired the right to occupy and the right to possession of the property, no later than January 9, 1970, the appellants contend the Act itself requires payment of interest from that date.

■■ In our view this is not a correct interpretation of the words of the statute. As the appellants point out, many times the condemning body does not enter into immediate possession of the condemned property. We believe recognition of this fact—which indeed was the case here—was the underlying reason for the phraseology of paragraph (a) of section 2.6 of the Act, that interest shall be payable "from the date on which the parties interested in the property *surrendered possession of the property * * *.*" (Emphasis ours.) The framers of the legislation could just as easily have stated the date for commencement of interest as being from the date on which the condemning body acquired the *right* to possession. That they did not do so we believe is a deliberate recognition of the fact that many times the owner is allowed to possess

and operate the premises for a period of time after the filing of the condemnation petition. Where the owner elects to do so he does not "surrender possession" at that time but for his or its own purposes continues in possession, thereby deriving whatever advantages accrue to such possession.

■■ We interpret the words of the statute literally, therefore, as meaning actual surrender, and where the owner occupies and uses the property after the State acquires a right to possession, then subsequently surrenders it, the owner should not be allowed to complain that interest was not computed from the earlier date. It is true that in this case the defendants, after the condemnation suit was filed, petitioned the court to order the taking of the whole property. The State, of course, did not need the whole property and apparently deferred taking more than it needed pending further developments, such as an alternative access being developed for the remainder from Route 53 or the sale of the remainder to an adjoining owner. There is some suggestion in the record that the adjoining property, which had access to Route 53, was owned by the parties or some of the parties interested in the condemned property. At any rate it was not clear that the property was irreparably damaged until the direct access to Route 20 was actually cut off. No figures are cited by the defendant to indicate any loss of revenue from the property during the interval between January 9, 1970, and August 1, 1971, because of the State's operations, nor is there any allegation that the defendants had had any offer for the sale or lease of the property previous to the condemnation and that the changed condition of the property impaired any such possibility. So far as the record available to us indicates, therefore, the possession and operation of the premises while direct access to Route 20 was available meant that the damage done by the condemnation was theoretical and potential but not actual in terms of dollars and cents during that interval.

■■ While we recognize the validity of respondents' position that compensation is due and payable under eminent domain law for any damage done to the remainder by the taking, the respondents have not shown actual damage, since it operated the same business and otherwise used the property as before up to August 1, 1971. At least there is nothing in the record indicating otherwise. The fact that respondents could not have sold or leased the premises for the same figure as before the taking does not in itself create "damage" justifying an award of interest from the date of the taking, but in any event no such fact was established in the record before us. It is of course obvious that when all direct access was cut off, producing a landlocked situation for the property, a drastic

change in its condition *was* effected and at that time the respondents could establish real damage to the remainder of its property. It was in recognition of this fundamentally changed condition of the property that the State amended its petition to condemn and took the whole property. ■■ We see no conflict between the Illinois Constitution and the eminent domain statute. The Constitution establishes the right to compensation for damage done by a taking; the Eminent Domain Act simply limits the interest to be paid on the award for such damage to begin at such time as the interested parties surrender possession. The respondents in this case derived whatever advantage was possible by possession of the premises until August 1, 1971, and are not entitled to interest in addition, prior to that date.

Any conflict between the Eminent Domain Act and the Constitution of the State of Illinois appears to be derived from the respondents' own construction of the statute, a construction which we believe is not warranted by the language of the Act itself.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.